Michael P. MAGUIRE, Administrator of the Estate of George M. Leggio, deceased, Defendant Below, Appellant,

v.

Samuel H. LEGGIO, by his guardian ad litem, George P. Leggio, Plaintiff Below, Appellee.

Supreme Court of Delaware.

July 12, 1971.

James F. Kipp, of Becker & Kipp, Wilmington, for defendant below, appellant.

John E. Babiarz, Jr., of Biondi & Babiarz, Wilmington, for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

The appellant, Michael P. Maguire, administrator of the estate of George M. Leggio (George), was sued in Superior Court by George's brother, Samuel H. Leggio (Samuel), through his guardian *ad litem*, for damages resulting from an automobile accident. Samuel was a passenger in a car driven by George, which was involved in an accident on April 30, 1968, at about 4:35 p. m. The complaint charged wanton conduct on George's part, under our Guest Statute, 21 Del.C. § 6101. The jury rendered a verdict in the plaintiff's favor and assessed damages at $868,000.00. Judgment was entered on that verdict.

In this appeal, George's administrator charges error in several respects. He contends that the definition of "wanton conduct" in the jury instruction was insufficient; that the Court erred in admitting certain color photographs into evidence; that the plaintiff failed to prove a causal relationship between George's conduct and Samuel's injuries; that it was error to permit an economist to include estimated future medical expenses in making certain calculations; that the amount of the verdict was excessive.

The accident occurred on Kirkwood Highway between Elsmere and Price's Corner. We take judicial notice that this

highway is one of the most heavily traveled in the State, and that 4:30 p. m. is one of the busiest times of the day for traffic. The road is a dual highway, with a median strip. The posted speed limit was 40 m. p. h. The accident occurred near its intersection with Woodward Avenue. The car in which these young men were traveling was a new Ford Mustang. George was driving, Samuel was a passenger in the right front seat, and Kenneth McVeigh was a passenger in the rear seat.

Kenneth testified that the car had stopped for a red light at Price's Corner. It was then raining lightly. When the light turned green, George started up. As he cleared the intersection, it began to rain heavily. George "floored" the accelerator and started to spin the wheels, whereupon the car began to "fishtail." Both passengers shouted to the driver to watch out or to slow down but, instead of slackening his speed, George continued at full speed. The car slid badly, and finally went onto the median strip, hit several small reflector signs, made a complete half-turn, and hit a telephone pole. At the impact the front end of the car broke off completely and was impelled across the road, 22½ feet from the pole. George was killed.

Various witnesses gave estimates of the car's speed. Kenneth stated that it was going at least 80 m. p. h. A woman who was driving on the highway indicated that it was going at 60 m. p. h. when she first saw it, but at the time of impact, was going at least 80 m. p. h. An officer who arrived about ten minutes after the impact estimated that the speed was a minimum of 65 m. p. h. and possible even faster.

▪ Considering the entire situation as it then existed, including the nature of the traffic on this highway,[1] the heavy rain, the admonitions of the two passengers to slow down despite which George continued to increase the speed, his action of spinning the wheels—a finding of wanton conduct under our Guest Statute was not only justified, but, in our opinion, was the only reasonable conclusion. The case is one in which a directed verdict on the issue of liability would have been justified.

▪ The definition of "wanton conduct" given to the jury by the trial Judge substantially includes all the elements of that term as discussed by this Court in Wagner v. Shanks, Del.Supr., 194 A.2d 701 (1963), and Riegel v. Aastad, Del.Supr., 272 A.2d 715 (1970). Appellant's principal contention appears to be that the Judge erred in not stating to the jury that wanton conduct is different from gross negligence (see McHugh v. Brown, Del.Supr., 11 Terry 154, 125 A.2d 583, 1956), although he did state that it differs from mere negligence. Assuming that this was error, it was certainly harmless in this case.[2]

1. All three young men lived in the Wilmington area and must have been acquainted with this highway.

2. The pertinent part of the charge was as follows:

Now, wanton conduct resulting in injury to another may be said to be such conduct as exhibits a conscious indifference to consequences in circumstances where probability of harm to another within the circumference of the conduct is reasonably apparent, although harm to each other is not intended. It is conscious indifference, the I-don't-care attitude, that characterizes wanton conduct. Wanton conduct is a reckless state of mind, a conscious indifference to consequences.

"The term 'wanton disregard' does not mean mere negligence, and I want to make clear to you that wantonness and negligence are two different things in law. Negligence is usually defined as the doing of something which a reasonably prudent person would not have done under similar circumstances. No conscious indifference to circumstances is necessary. On the other hand, wantonness, which is the standard of liability under the Guest Statute involved in this case, requires something more than negligence. It requires the conscious indifference, the I-don't-care-a-bit-what-happens attitude that I have described and outlined to you."

Turning to the contention that the verdict was excessive:

■ Samuel's injuries were summarized by one of the doctors as follows:

"He had a ruptured spleen; a laceration of the left lobe of the liver; he had fractures of both arms, and by arm we mean the upper part, and both forearms; he had a dislocation of the right shoulder; he had a fracture of the first lumbar vertebra—that is a portion of the spine—with a resultant paraplegia, which is a loss of motion and feeling of the lower portion of the body; he had numerous fractured ribs; he had tears and bruising of probably both lungs; he had a fracture of his mandible, which is the lower jaw, and this was a compound fracture; he had broken teeth. Then, I suppose he had some minor abrasions and lacerations.

"In addition, he had various complications during his hospitalization. First, he had an infection of his lungs, or pneumonitis, or pneumonia; he had a periurethral abscess; he had a stress ulcer with resultant bleeding; and the most crippling of all, he had a cardiac arrest with resultant brain damage."

The brain damage referred to in that testimony was more fully described by another doctor. It has left Samuel in a retarded state. While he is not completely oblivious to what is going on, his mental faculties are markedly reduced to the point that he is severely mentally handicapped. He is barely conscious and is unable to talk. Almost all of his time must be spent in bed under restraints in order to protect himself and others. He has to be fed and otherwise taken care of, and he has to be turned from one side to the other every two hours to prevent bed sores. He needs constant supervision, and there is doubt as to whether he could be cared for outside of a hospital. His condition is permanent. At the time of trial, he had a life expectancy of 46.3 years. Based upon that life expectancy, an expert calculated the present value of his future medical expenses alone at a figure exceeding $600,000.00. His actual medical expenses on the date of trial were over $46,000.00. Despite his deplorable physical condition, there is testimony to indicate that his life expectancy will be the normal period of about 46 years.

In the light of all the testimony, we cannot hold that the damages awarded were excessive.

■ We find no reversible error in the admission of the color photographs or the estimated future medical expenses. Clearly, there was ample evidence to justify the jury's finding of causal connection between George's conduct and Samuel's injuries.

The judgment below will be affirmed.